UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| Mark A. Perry, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:21-cv-00133-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Kilolo Kijakazi,* | ) |
| *Commissioner of the Social Security* | ) |
| *Administration,*[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Mark. A. Perry appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). For the following reasons, none of Perry's arguments are persuasive, and thus, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Perry applied for DIB on January 10, 2019, alleging disability as of November 1, 2016. (ECF 11 Administrative Record ("AR") 14, 170-71).[2] Perry was last insured for DIB on September 30, 2018. (AR 16). Thus, he must establish that he was disabled as of that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that he was disabled as of his date last insured in order to recover DIB).

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

[2] Perry had previously filed a claim for benefits on June 12, 2017, which was denied at the initial level on August 3, 2017. (*See* AR 60-75, 79).

Perry's claim was denied initially and upon reconsideration.  (AR 78-96).  After a timely request (AR 126-27), a hearing was held on April 24, 2020, before administrative law judge ("ALJ") Stephanie Katich, at which Perry, who was proceeding without the aid of counsel, and a vocational expert ("VE") testified (AR 28-59).  On May 6, 2020, the ALJ rendered an unfavorable decision to Perry, concluding that he was not disabled because he could perform his past relevant work, as well as a significant number of other jobs in the economy, despite the limitations caused by his impairments through his date last insured.  (AR 14-22).  Perry's request for review was denied by the Appeals Council (AR 4-6), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 404.981.

Perry filed a complaint with this Court on April 3, 2021, seeking relief from the Commissioner's decision.  (ECF 1).  In his appeal, Perry alleges that the ALJ failed to:  (1) fully explore Perry's lack of representation and what it would mean to the success of his claim, (2) explore Perry's knowledge of the content and adequacy of the record and whether additional exhibits were needed, (3) question the VE about her methodology or allow Perry to cross-examine the VE, and (4) appropriately consider and apply the evidence in the record.  (ECF 16 at 7).

As of his date last insured, Perry was forty-six years old (AR 33, 205), had received a GED (AR 210, 217), and had relevant work experience as an extrusion machine operator and a molding machine operator (AR 20; *see also* AR 217).  In his application, Perry alleged disability due to a right knee replacement, left knee pain, nerve damage, and high blood pressure.  (AR 79, 88, 216).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed "only if [it is] not supported by substantial evidence or if the [ALJ] applied an erroneous legal standard."  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).  "Substantial evidence must be more than a scintilla but may be less than a preponderance."  *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citations omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner."  *Clifford*, 227 F.3d at 869 (citations omitted).  "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive."  *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted).  "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits."  *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant seeking DIB must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work; and (5) whether he is incapable of performing any work in the national economy.[3]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. § 404.1520.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.*  The burden of proof

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. § 404.1520(e).

lies with the claimant at every step except the fifth, where it shifts to the Commissioner.
*Clifford*, 227 F.3d at 868.

### B.  The Commissioner's Final Decision

On May 6, 2020, the ALJ issued a decision that ultimately became the Commissioner's
final decision.  (AR 14-22).  At step one, the ALJ concluded that Perry had not engaged in
substantial gainful activity during the period between November 1, 2016, his alleged onset date,
and September 30, 2018, his date last insured.  (AR 16).  At step two, the ALJ found that Perry
had the following severe impairments:  status post right knee total knee arthroplasty, right sciatic
neuropathy, and obesity.  (*Id.*).

At step three, the ALJ concluded that Perry did not have an impairment or combination of
impairments severe enough to meet or equal a listing.  (AR 17).  The ALJ then assigned Perry
the following RFC:

> [T]he claimant had the [RFC] to perform light work as defined in
> 20 CFR 404.1567(b) except that the claimant can occasionally
> climb ramps and stairs, he can never climb ladder, ropes, or
> scaffolds, he can occasionally balance, stoop, and crouch, he can
> never kneel or crawl, and he should avoid all exposure to extreme
> cold, wet, slippery or uneven surfaces and unprotected heights.

(*Id.*).

The ALJ found at step four that Perry was able to perform his past work as an extrusion
machine operator and a molding machine operator, as they were performed by him.  (AR 20).
Alternatively, the ALJ found that an individual with Perry's RFC, age, education, and work
experience could perform light exertional level jobs that exist in a significant number in the
economy, such as cashier, price marker, and general office helper.  (AR 21).  As such, Perry's
application for DIB was denied.  (AR 22).

5

### C.  Lack of Representation

Perry first contends that the ALJ "failed to fully explore the lack of a representative and what it would mean to the success of [his] claim."  (ECF 16 at 7 (emphasis omitted)).  In that regard, Perry points to the following exchange from the hearing:

> ALJ:     And I also note that you are not represented by an attorney or another qualified individual.  It looks like you did have representation in the past.  That representative withdrew the representation of you last June of 2019.
>             And then, additionally, it appears as though you were previously contacted by staff -- a staff member from the Fort Worth hearing office advised of your right to representation for hearing.  Do you recall having that conversation with the staff member from the hearing office?
>
> CLMT:    Yes, Judge.
>
> ALJ:     And did you understand the information contained in correspondence sent to you as well as the communications by the hearing office about your rights to representation?
>
> CLMT:    Yes, Your Honor.
>
> ALJ:     Do you want to proceed today without a representative?
>
> CLMT:     Yes, Your Honor.

(ECF 16 at 10 (quoting AR 32-33)).

Perry, through counsel, now emphasizes that "[t]here are many things that a representative can do to improve a claimant's position in a disability case," and suggests that the ALJ should have questioned him about the circumstances regarding his lack of representation and the departure of his prior counsel, and that a representative could have "conform[ed] the

6

evidence to his claim." (ECF 16 at 11). Similarly, Perry asserts that the ALJ should have informed him of his ability to offer additional evidence and request additional time to provide it. (*Id.* at 11-12). As such, Perry contends the ALJ failed to provide him with a "full and fair" hearing. (*Id.* at 12).

The Commissioner, in response, contends that Perry knowingly waived representation, pointing to a "Your Right to Representation" pamphlet sent to Perry as part of his notice of the April 24, 2020, hearing. (ECF 19 at 5-6 (citing AR 152-53)). The Commissioner also notes that Perry should have been familiar with the need for representation since he had been represented by counsel earlier in the application process. (ECF 19 at 6; *see* AR 143 (Perry's former counsel's withdrawal of representation)).

A claimant has a statutory right to representation in social security proceedings. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (citing 42 U.S.C. § 406). A claimant, however, "can waive that right once advised of (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Id.* (citations and internal quotation marks omitted); *see also Skinner*, 478 F.3d at 841; *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994); *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). "[S]o long as it contains the required information, written notice adequately apprises a claimant of his right to counsel." *Jozefyk*, 923 F.3d at 497.

Here, Perry does not suggest that he did not receive the "Your Right to Representation" pamphlet with the notice of his hearing. That pamphlet clearly lists: (1) "[w]hat a representative can do"—including "[h]elping [a claimant] get medical records or information to support [his]

7

claim," (2) the possibility of someone else paying for representation or a fee agreement, and (3) the limitation on attorney fees to 25 percent of past due benefits and the need for court approval of fees. (AR 152-53). Further, at the hearing, the ALJ confirmed that Perry understood the communication mailed to him and a conversation he had with a social security staff member advising him of his right to representation. (AR 32-33). The ALJ then confirmed that Perry consented to proceeding without representation. (*Id.* at 33).

The Seventh Circuit Court of Appeals has found that the pamphlet mailed to Perry adequately "lists, in detail, the admonishments [it] requires to establish waiver," *Jozefyk*, 923 F.3d at 496, and multiple courts within this circuit have accepted receipt of the pamphlet as proof that a claimant was adequately informed of his or her right to counsel, *see, e.g., Laura P. v. Kijakazi*, No. 20-cv-4751, 2022 WL 832606, at *3 (N.D. Ill. Mar. 21, 2022); *Rebecca H. on behalf of Joseph H. v. Kijakazi*, No. 4:21-CV-15, 2022 WL 354696, at *9 (N.D. Ind. Feb. 7, 2022); *Abraham A. v. Kijakazi*, No. 20 C 3439, 2022 WL 313758, at *3 (N.D. Ill. Feb. 2, 2022) ("[I]n light of the ALJ's oral reminder and the written notices Plaintiff admittedly received in this case—including the 'Your Right to Representation' pamphlet found sufficient in *Jozefyk*— Plaintiff validly waived his right to counsel by electing to proceed without a representative."); *John L. v. Berryhill*, No. 17 C 7537, 2019 WL 2601353, at *6 (N.D. Ill. June 25, 2019) ("The fact that Claimant was informed of his rights by mail instead of by the ALJ herself does not invalidate his waiver."). Here, Perry received written notice of his right to representation and the ALJ "confirmed that [Perry] was appearing without an attorney and that he was aware of his right to counsel." *Jozefyk*, 923 F.3d at 497. The ALJ was not required to further recite these

8

admonishments at the hearing.  *Id.* at 496.  Accordingly, the Court will not remand on these grounds.

### D. The ALJ's Duty to Develop the Record

Perry also asserts that the ALJ failed to explore his knowledge of the content and accuracy of the proposed exhibits, hear possible objections to those exhibits, or determine the need for additional records.  (ECF 16 at 12).  At the hearing, the ALJ and Perry had the following brief exchange regarding the record:

| | |
|---|---|
| ALJ: | Okay.  In addition,  have you had  an opportunity to  review the  evidence in this record? |
| CLMT: | Yes. |
| ALJ: | What  I have in the  record here are the  last— I'm going to  go ahead  and  enter  into the record  Exhibits  1A through 8A, 1B through 13B, 1D through 10D, 1E through 13E, and I have  1F through 9F at present. |

(AR 33).  Near the end of the hearing, however, the ALJ asked Perry if there was anything else he would like to speak about.  (AR 56-57).  In response, Perry testified that his "pain comes and goes sometimes," catching him off guard and causing him to trip and fall, which in turn "mentally scares" him, but did not otherwise point to additional evidence.  (AR 57).  Further, the ALJ asked Perry if he had any questions before ending the hearing, after which Perry responded that he did not.  (AR 57-58).

Perry argues that the ALJ should have asked him specific questions about when he reviewed the exhibits, with whom, whether he did so with counsel, if he understood them, if he had any objections, whether he was aware of their contents, whether everything in the exhibits was correct, and whether he would like to offer any additional evidence.  (ECF 16 at 12-13).

Perry suggests that such questioning was needed due to his lack of counsel.  (*See id.* at 16 ("A representative would have prepared objections as needed and would have looked into the possibility of additional or updated exhibits.  Mr. Perry [was] unrepresented, so none of that happened, and the ALJ did not fulfill her obligation to Mr. Perry.")).

In his reply, Perry expands on this argument, suggesting that the "record on its face should have given the ALJ in this case reason to believe that there might be more evidence available" that Perry might not have even known about.  (ECF 20 at 6).  In particular, Perry argues that because the record reveals complaints of knee pain following his knee replacement culminating in nerve block injections in 2019, the ALJ should have asked him about that procedure.  (*Id.* at 5-6).  Similarly, Perry asserts that the ALJ should have known that it is common for knee replacements to be followed by physical therapy, and as such, the ALJ should have sought such records.  (*Id.* at 6).  "Such records would," Perry contends, "on the one hand, show the progress of the postsurgical healing process and, on the other hand, would have documented pain [he] was feeling."[4]  (*Id.*).

The Commissioner, in response, contends that the ALJ fully and fairly developed the record, and that Perry has failed to point to any specific, relevant fact that she failed to consider.  (ECF 19 at 7).  Rather, the Commissioner argues that Perry "merely speculates as to what a representative might have done at the hearing, including the possibility of additional or updated evidence."  (*Id.*).

---

[4] "As a general rule, arguments raised for the first time in a reply brief are waived."  *Jennings v. United States*, 461 F. Supp. 2d 818, 833 (S.D. Ill. 2006); *see also Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016) ("[The claimant] waived those arguments by not developing them and by raising them for the first time only in his reply brief.").  Thus, while the Court could disregard these arguments, in the interest of justice it will consider them on the merits.

"Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (citing *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991)).  And when a claimant is unrepresented by counsel, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Skinner*, 478 F.3d at 841-42 (citation and internal quotation marks omitted); *see also Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997); *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).  Once the Commissioner establishes that the record was developed fully and fairly, though, "the plaintiff has the opportunity to rebut this showing by demonstrating prejudice or an evidentiary gap." *Binion*, 13 F.3d at 245.  "Prejudice may be demonstrated by showing that the ALJ failed to elicit all of the relevant information from the claimant." *Id*. (citations omitted).

Courts, though, "generally respect the [ALJ's] reasoned judgment" with respect to how much evidence to gather, *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994), and thus a significant omission is usually required before a court will find that a remand is warranted on this basis.  *Nelson*, 131 F.3d at 1235; *see also Simons v. Saul*, 817 F. App'x 227, 232 (7th Cir. 2020).  In other words, "the omission must be prejudicial." *Nelson*, 131 F.3d at 1235.  "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Id.* (quoting *Binion*, 13 F.3d at 246); *see also Simons*, 817 F. App'x at 232.

Here, Perry fails to show that any omission from the record was prejudicial.  As mentioned, Perry does not attempt to identify what evidence the ALJ should have sought out until his reply, and then only argues that the ALJ should have asked more about Perry's nerve block injections and acquired his physical therapy records—if any exist.  But while Perry alleges

that the success or failure of the nerve block injections is "immensely material," the injections did not occur until August 27, 2019, approximately eleven months after his date last insured, September 30, 2018.  (*See* AR 16, 422).  "While evidence from after the expiration of insured status can be relevant to establish that an impairment existed prior to a claimant's [date last insured], *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005), it does little to establish the severity or limitations stemming from such an impairment . . . ." *Thelmarae W. v. Saul*, 476 F. Supp. 3d 717, 730 (N.D. Ill. 2020).  In any event, the ALJ found Perry's status post right knee total knee arthroplasty to be a severe impairment (AR 16), and even if she did not, any error would be harmless so long as "the ALJ properly considered all of [Perry's] severe and non-severe impairments, the objective medical evidence, [his] symptoms, and [his] credibility when determining [his] RFC . . . ." *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015).  Perry does not explain what additional limitations—if any—would follow from more questioning regarding the nerve block injections, and thus it is hard to see how such information is material.

Further, Perry has not submitted any physical therapy records and in any event does not explain what additional limitations they would support.  As such, Perry's suggestion that further questioning about his nerve block injections might have changed the ALJ's ultimate decision is mere conjecture.  *See Charles F. v. Saul*, No. 18 C 618, 2019 WL 3776656, at *5 (N.D. Ill. Aug. 12, 2019) ("[The claimant] contends that the treating doctor's opinion would be 'valuable information' to support his claim.  Therefore, the burden was on [the claimant] to supply an opinion from Dr. Vermillion."); *see also Abraham A.*, 2022 WL 313758, at *3 ("Plaintiff's argument concerning the lack of medical opinions must fail because Plaintiff himself did not

offer the medical opinions he now claims were lacking.").  Accordingly, remand is not required on these grounds either.

### E.  The Vocational Expert

Perry next challenges the ALJ's alleged failure to question the VE regarding the methodology used to reach her job number estimates.  (ECF 16 at 14-15).  Similarly, Perry claims that the ALJ did not provide him with the opportunity to cross examine the VE about her responses to the ALJ's hypothetical questions.  (*Id.* at 7, 13-14).  Somewhat contradictorily, Perry also suggests that the ALJ improperly ignored the VE's testimony regarding a hypothetical person with greater restrictions than Perry.  (*Id.* at 19-20).  For the following reasons, none of these arguments are convincing.

By way of background, the VE began her testimony by confirming her resume correctly stated her professional qualifications, that she did not have prior contact or discussion with Perry, that she understood she was to be an impartial witness, that she was familiar with the Commissioner's different exertional work levels, and that she would need to advise the ALJ if she gave any opinion in conflict with the Dictionary of Occupational Titles ("DOT") or any of its companion publications.  (AR 48-49).  After confirming that she had reviewed the record and listened to the hearing testimony, the VE summarized her qualifications—testifying that she held a master's degree in social work, had been testifying in social security cases since 2011, and was a member of the American Board of Vocational Experts.  (AR 49-50).

The VE questioned Perry about how his past work as was performed, and then reviewed Perry's past work and how it would be classified per the DOT.  (AR 51-52).  Next the ALJ asked the VE to consider a hypothetical individual of Perry's age, education, and work experience with

the same restrictions as those ultimately included in Perry's RFC, and whether such individual could perform any of Perry's past relevant work. (AR 52-53). The VE testified that such an individual could perform Perry's past work as an extrusion machine operator and a molding machine operator as generally and actually performed at the light level. (AR 53). The VE further testified that such a hypothetical individual could work as a cashier, price marker, and general officer helper, and that such jobs were representative, but not exhaustive, of what jobs the hypothetical individual could perform. (AR 53-54). At no point did the ALJ or Perry ask the VE how she reached her job number estimates, and the VE did not offer any explanation.

The ALJ then asked the VE a second hypothetical that Perry now seizes upon, including all the restrictions included in the first hypothetical, but adding that the hypothetical individual would need to alternate between sitting, standing, and walking about every twenty minutes, and would use an assistive device for ambulating and standing using one or both upper extremities—precluding lifting or carrying any object with both extremities while ambulating or standing. (AR 55). The VE testified that such a person would be precluded from gainful employment. (AR 56). When asked if any of her testimony was inconsistent with the DOT, the VE testified that the DOT does not cover alternating positions or using an assistive device, so her testimony in that regard came from personal experience and published articles. (*Id.*).

As discussed *supra*, the ALJ asked Perry if there was anything else he would like to talk about and Perry discussed his knee pain. (AR 56-57). The ALJ then explained he would consider the hearing testimony and the evidence in the record in reaching the decision and that Perry could contact a field office with any questions. (AR 57-58). Finally, after reminding Perry of the importance of providing the Commissioner with an up-to-date address, she asked him if he

had any other questions.  (AR 58).  When Perry responded that he did not, the ALJ ended the

hearing.  (AR 59).

   Ultimately, the ALJ did not commit an error at step five requiring remand.  First and

foremost, the ALJ determined that Perry was not disabled because he was capable of performing

his past relevant work as an extrusion machine operator and a molding machine operator through

his date last insured.  (AR 20).  The ALJ then made an alternative finding that Perry could also

perform other jobs that exist in the national economy, such as cashier, price marker, and general

office helper.  (AR 21).  Thus, even if the ALJ had not included any reference to these jobs or the

VE's job number estimates, she still would have found Perry to not have been disabled prior to

his date last insured.  Accordingly, any error in accepting the VE's testimony would be harmless.

*Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (explaining that harmless errors are those

that do not ultimately impact the outcome of the determination); *see also Guranovich v. Astrue*,

465 F. App'x 541, 543 (7th Cir. 2012) ("Because the ALJ's decision would be the same under

this alternative RFC at step five, any error at step four was harmless."); *Flynn v. Astrue*, 563 F.

Supp. 2d 932, 945 (N.D. Ill. 2008) ("The ALJ did find Ms. Flynn could return to some of her

past work, but nevertheless continued on in the sequential analysis to step five and determined

that she could perform other jobs that exist in significant numbers in the local economy.  As

such, if the ALJ committed any errors at step four, they were harmless.").

   Even if any such error was not harmless, the fact remains that Perry did not challenge the

job estimate numbers at the hearing.  Perry premises his argument that the ALJ was required to

question the VE about her job estimate numbers under the Supreme Court's decision in *Biestek v.*

*Berryhill*, 139 S. Ct. 1148 (2019).  (ECF 16 at 14).  The Court in *Biestek*, however, simply

declined to set forth a categorical rule that an ALJ delve into a VE's methodology unprompted.
139 S. Ct. at 1157 ("Biestek petitioned us only to adopt the categorical rule we have now
rejected."); *see also Krell v. Saul*, 931 F.3d 582, 587 (7th Cir. 2019). "Simply put (and contrary
to [Perry's] counsel's assertion), *Biestek* does not mandate that certain questions be posed to
VEs." *Tia N. v. Kijakazi*, No. 1:20-CV-303-JVB, 2022 WL 263442, at *3 (N.D. Ind. Jan. 28,
2022) (rejecting substantially the same argument advanced here), *appeal docketed*, No. 22-1499
(7th Cir. Mar. 29, 2022).

  Still more, "an ALJ is entitled to rely on unchallenged VE testimony." *Zblewski v.
Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008) (citations omitted). Perry fails to point to any
authority that states an ALJ is required to probe into the VE's methodology about the number of
representative jobs where the claimant did not challenge the VE's methodology at the hearing.
*Cf. Chavez v. Berryhill*, 895 F.3d 962, 970 (7th Cir. 2018) ("Before accepting a VE's job-number
estimate, the ALJ, *when confronted by a claimant's challenge*, must require the VE to offer a
reasoned and principled explanation." (emphasis added)); *see Peck v. Colvin*, No. CV 12-577
AGR, 2013 WL 3121280, at *4 (C.D. Cal. June 19, 2013) (rejecting the claimant's argument that
the ALJ was required to probe the methodology of the VE where the claimant appeared
unrepresented at the hearing but did not challenge the VE's methodology). Further, Perry "has
not submitted any evidence suggesting that if the ALJ had made the inquiries that the VE's
answers would have shown a lack of rational basis." *Tia N.*, 2022 WL 263442, at *5.

  The Court notes that while the ALJ asked Perry if there was "anything else" and if he had
any questions, she did not specifically ask him if he would like to question or cross-examine the
VE about her methodology. (*See* AR 56-58). But as was the case with his right to

representation, Perry was notified of his ability to question witnesses in writing before the hearing.  (*See* AR 149 ("You and your representative (if you have one) may submit documents, present and question witnesses, state your case, and give written statements about the facts and law." (emphasis added)); *see also De La Cruz v. Comm'r of Soc. Sec*., No. 6:19-cv-1068-ORL-37LRH, 2020 WL 2857159, at *7 (M.D. Fla. May 18, 2020) (R. & R.), *adopted by*, No. 6:19-cv-1068-ORL-37LRH, 2020 WL 2850127 (M.D. Fla. June 2, 2020); *Merritt v. Berryhill*, No. 8:17-cv-00712-JDW-JSS, 2018 WL 4357135, at *4 (M.D. Fla. Sept. 13, 2018).  Still more, as already mentioned, Perry has not explained how additional questioning "would have shown [that the ALJ's decision lacked a] rational basis."  *Tia N.*, 2022 WL 263442, at *5; *see also Thomas v. Comm'r of Soc. Sec.*, 550 F. App'x 289, 291 (6th Cir. 2014) ("Thomas had been notified in writing that she could speak to the expert, the ALJ gave her the opportunity to speak after the expert testified, and Thomas has not identified any significant inaccuracy in the expert's testimony or any significant testimony that she could have elicited.").  Accordingly, Perry has not established that any error would have been prejudicial.

Finally, as mentioned, Perry somewhat contradictorily suggests that the VE's testimony was valid—at least as to her response to the second hypothetical—and as such the ALJ should have relied upon her testimony and found him to be disabled.  But "[w]hen an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record."  *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases).  "Commonly, the ALJ will pose a series of hypothetical questions that describe the claimant's conditions and limitations, and the VE will testify to the number of jobs that the claimant can perform based on those limitations."  *Simila v. Astrue*, 573 F.3d 503, 520

(7th Cir. 2009).  There is no requirement, however, that an ALJ rely only on her most restrictive hypothetical to the VE when reaching her final decision.  *See Edinger v. Saul*, 432 F. Supp. 3d 516, 532 (E.D. Pa. 2020) ("In addition, the ALJ properly relied on the less-restrictive hypothetical that did not include the other limitations raised by Ms. Edinger—taking breaks, elevating her feet, using one hand, and being absent.").  So long as the first hypothetical which the ALJ ultimately relied on contained all of Perry's clearly established limitations, there was no error.  *Id.*

In sum, Perry's argument regarding the VE's methodology is fundamentally flawed because the ALJ alternatively found that Perry could perform his past relevant work.  As such, any error is harmless.  In any event, Perry has not shown that the ALJ erred by failing to independently question the VE about her methodology.  Nor has Perry shown that the ALJ erred by relying on the VE's first hypothetical rather than the second—so long as that hypothetical contained all of Perry's limitations supported by the record.  Accordingly, the Court will turn to Perry's remaining arguments concerning whether the ALJ's treatment of the record is supported by substantial evidence.

*F.  The Record*

Perry alleges that the ALJ failed to appropriately consider and apply the evidence in the record.  (ECF 16 at 19).  Perry's argument can be broken down into various sub-parts challenging specific portions of the ALJ's decision.

First, Perry attacks the ALJ's findings at step two that:

> During the period at issue, the claimant's hypertension, hyperlipidemia, diabetes, and a skin rash did not significantly limit him over 12 continuous months in duration (Ex. 2F, 4F). Additionally, after the expiration of the claimant's date last

> insured, the claimant had a syncopal incident, but the evidence
> does not establish related limits over 12 continuous months before
> the date last insured expired (Ex. 8F).

(AR 17).  In so doing, Perry argues that Exhibit 2F—a May 23, 2017, letter from cardiologist

Bhaktavatsala Apuri, M.D., to Perry's primary care provider, Charles Coats, M.D., forwarding

results of a stress test and assessment (AR 290)—"offers no bearing to [his] application for

benefits, and should not even have been mentioned . . . in the decision . . . ."  (ECF 16 at 20-21).

Similarly, Perry contends that Exhibit 8F—emergency department treatment notes following an

episode of syncope where Perry fell in a parking lot (AR 398-410)—"has no bearing on the

complaint of leg pain" and presumably should not have been considered (ECF 16 at 22).

Further, Perry claims that the ALJ improperly ignored portions of Exhibit 4F—the

treatment notes of Physical Medical Consultants (AR 323-74)—and cites to various portions of

the record he contends support his complaints of right knee pain following his knee replacement

(ECF 16 at 21 (citing AR 327 (electrodiagnostic study showing mild right sciatic neuropathy),

330); *see also* AR 323 ("There is electrophysiological evidence of today's [July 14, 2017]

evaluation consistent with a mild right sciatic neuropathy which primarily involves the tibial

nerve.")).  Perry also cites to treatment notes from September 19, 2017, March 14, 2018, June

25, 2018, and October 22, 2018, showing continued complaints of leg pain.  (ECF 16 at 22

(citing AR 352, 356, 360)).  As such, Perry contends that "[Exhibit] 4F establishes that [he] has

had leg pain since the knee surgery and has[] reported it to his doctor."  (ECF 16 at 22).

Perry seemingly ignores, however, that the ALJ obviously believed that Perry had leg

pain following his knee surgery given that she explicitly found Perry's status post right knee total

19

arthroplasty and right sciatic neuropathy to be severe impairments at step two.[5]  (AR 16).  The

Court "read[s] the ALJ's decision as a whole and with common sense."  *Buckhanon ex rel. J.H.*

*v. Astrue*, 368 F. App'x 674,  678-79 (7th Cir. 2010) (citations omitted).  While the ALJ may not

have refenced the evidence Perry now emphasizes at step two, she did so during her discussion

of Perry's impairments at step four while crafting the RFC.  (*See* AR 19 (citing AR 323, 352,

356)).  Though an ALJ "may not ignore entire lines of contrary evidence," *Arnett v. Astrue*, 676

F.3d 586, 592 (7th Cir. 2012) (collecting cases), the ALJ here obviously did not.

      Further, it is hard to see how the ALJ's citation to the record in support of the contention

that Perry's other impairments were not severe during the relevant period—specifically

hypertension, hyperlipidemia, diabetes, skin rash, and syncopal episodes—somehow undercuts

the ALJ's treatment of his leg pain.  The ALJ was required to consider the medical severity of all

of Perry's medically determinable impairments at step two.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

This is true even if Perry did not actually claim such an impairment in his application.  *See*

*Clifford*, 227 F.3d at 873 ("While Clifford did not claim obesity as an impairment when filing

her Disability Report, the evidence should have alerted the ALJ that Clifford had another

relevant impairment that could contribute to the cumulative effect of her other impairments.").

Exhibits 2F, 4F, and 8F each contain evidence of these conditions (*see*, *e.g,* AR 290, 344, 348,

356, 402), and the ALJ considered them as medically determinable impairments.  *See* 42 U.S.C.

§ 423(d)(3).  However, the ALJ found them to be non-severe during the relevant period, and

---

[5] "Signs and symptoms of sciatic neuropathy include weakness, impaired ankle reflex, paresthesias, sensory loss, and/or pain in the distribution of the nerve."  JOHN C. BALLANTYNE ET AL., BONICA'S MANAGEMENT OF PAIN 1216 (5th ed. 2018).

Perry does not challenge the ALJ's conclusion in this respect.  Accordingly, the Court sees no reason to remand on this argument.

Perry also faults the ALJ for discussing his obesity, and whether he meets or equals the Listing 1.03 (Reconstructive Surgery or Surgical Arthrodesis of a Major Weight-Bearing Joint) or Listing 11.17 (Peripheral Neuropathy), asserting that his "claim has nothing to do with those things."[6]  (ECF 16 at 22 (citing AR 17)).  But the ALJ was required to consider whether a claimant's impairments meet or equal a listing.  20 C.F.R. § 404.1520(a)(4)(iii).  Further, while obesity itself is no longer a listing, the ALJ was required to consider it in evaluating the severity of Perry's other impairments.  *Castile v. Astrue*, 617 F.3d 923, 928 (7th Cir. 2010) (citing SSR 02-1P, 2002 WL 34686281 (Sept. 12, 2002)).  Given that Perry does not challenge the ALJ's conclusion that he does not meet or equal a listing, he is seemingly just arguing that the ALJ's discussion was needless surplusage or a distraction from the ultimate issue of the decision.  The ALJ, however, did not err by considering whether Perry met a listing, given that she was specifically required to do so.

Next, Perry argues that the ALJ misapplied the evidence when formulating the RFC.  (ECF 16 at 23).  Specifically, Perry takes issue with the ALJ's finding that he "can occasionally climb ramps and stairs, he can never climb ladder[s], ropes, or scaffolds, he can occasionally balance, stoop, and crouch, he can never kneel or crawl, and he should avoid all exposure to extreme cold, wet, slippery or uneven surfaces and unprotected heights."  (*Id.* (citing AR 21)).  Perry contends that these limitations are not supported by the record—claiming that the only

---

[6] Perry does not allege that he actually meets the requirements of any listing, nor does he point to any evidence that would support a conclusion that he does.  Accordingly, any argument to the contrary is a nonstarter.  *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (observing that the claimant bears the burden of proving his condition meets all the requirements of or equals a listed impairment).

evidence supporting these limitations are the state agency physician reports which he argues are "less than creditable."  (ECF 16 at 24-25; *see also* AR 19-20, 63-65, 82-83, 91-93).  According to Perry, the state agency physicians considered incorrect allegations of disability (total knee replacement, nerve damage, and arthritis in the knee), rather than the "primary problem of severe pain in the right leg."  (ECF 16  at 25).  Perry also emphasizes that the state agency physicians did not actually examine him.  (*Id.* at 24-25).  Still more, Perry contends that the state agency physicians' statement that his impairment can reasonably be expected to produce pain or other symptoms is somehow inconsistent with their observation that there were no medical opinions in the record.  (*Id.* at 25).

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week.  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted). That is, the "RFC does not represent  the *least* an individual can do despite his or her limitations or restrictions, but the *most*."  *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545(a)(3).  Therefore, when determining the RFC, the ALJ must consider all medically determinable impairments,

mental and physical, even those that are non-severe.  20 C.F.R. § 404.1545(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

Overall, three state agency physicians offered opinions in this matter.  In 2017, upon an earlier application for benefits prior to Perry's knee surgery, M. Ruiz, M.D., found at the initial level that Perry could perform light work with occasional postural maneuvers other than frequent stooping, and he should avoid concentrated exposure to hazards.  (AR 63-64).  In February 2019, J. Sands, M.D., opined at the initial level that Perry could perform light work other than never climbing ladders, ropes, or scaffolds.  (AR 82-83).  At the reconsideration level, Fernando Montoya, M.D., opined the need for the same restrictions as Dr. Sands.  (AR 91-93).  In light of Perry's neuropathy, right knee range of motion deficits, and obesity, the ALJ adopted the more restrictive postural limitations from the 2019 opinions and the more restrictive environmental restrictions from the 2017 opinion.  (AR 24).  It is worth noting, then, that the RFC adopted by the ALJ is more restrictive than any other opinion in the record.

Perry's challenge to the non-examining state agency physician opinions is ultimately unconvincing.  First and foremost, the Court sees no issue with the state agency physicians listing Perry's allegations as total knee replacement, nerve damage, and arthritis in the knee, as these were the allegations that Perry made in his application for benefits, and it does not appear he ever attempted to amend his application.  (*See* AR 100, 209).

There is also no indication that the state agency physicians failed to fairly consider the evidence in the record at the time.  While Dr. Ruiz's opinion was more remote in time by the date of the hearing, the ALJ was still entitled to consider it in reaching her conclusion.  *See* 20 C.F.R. § 404.152c(a).  Further, the ALJ did not solely rely on Dr. Ruiz's opinion, as she also

23

relied on the later opinions of Drs. Sands and Montoya.  Other than his speculation about the possibility of physical therapy records, Perry does not identify any evidence that both Drs. Sands or Montoya failed to consider that would render their opinions out of date.  *Cf. Fike v. Astrue*, No. 1:11-CV–00168, 2012 WL 1200670, at *8 (N.D. Ind. Apr. 10, 2012) (remanding case where the ALJ relied on the opinion of the state agency physicians who had neither examined the claimant nor reviewed the permanent restrictions assigned by the claimant's treating physician); *Ulloa v. Barnhart*, 419 F. Supp. 2d 1027, 1036 (N.D. Ill. 2006) (same).

Perry fails to appreciate that "[t]he regulations, and this Circuit, clearly recognize that reviewing physicians . . . are experts in their field and the ALJ is entitled to rely on their expertise." *Ottman v. Barnhart*, 306 F. Supp. 2d 829, 839 (N.D. Ind. 2004); *see also Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).  There is also nothing inherently inconsistent about a state agency physician's conclusion that Perry's impairment can reasonably cause pain without there being a medical opinion in the record.  Again, the state agency physicians are experts who are able, and indeed required, to offer opinions about the limiting effects of a claimant's impairments—even if they have not examined the claimant.  In any event, Perry offers no other opinion evidence contradicting the state agency physicians or opining the need for greater restrictions.  S*ee Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017) (affirming the ALJ's reliance on the uncontradicted opinions of the reviewing state agency physicians); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("More importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ."); *Buckhanon,* 368 F. App'x at 679 ("The ALJ expressly relied upon the medical judgment of the state-agency consultants, and their uncontradicted opinions constitute substantial evidence . . . ."

(citations omitted)); s*ee also Luigi B. v. Saul*, No. 18 CV 7392, 2021 WL 83508, at *8 (N.D. Ill.

Jan. 11, 2021); *McWilliams v. Berryhill*, No. 15-CV-1588, 2017 WL 1498560, at *11 (N.D. Ill.

Apr. 25, 2017).

Perry also summarizes portions of the ALJ's decision that he believes improperly cite to

unnecessary parts of the record, mirroring his earlier argument regarding the ALJ's discussion of

the listing requirements.  For example, Perry argues that the ALJ should not have cited to pre-

knee replacement treatment notes contending that they "have nothing whatsoever to do with the

leg pain that followed that surgery."  (ECF 16 at 26-27).  Perry similarly faults the ALJ for citing

to evidence after his date last insured and by focusing on his obesity and body mass index.  (*Id.*

at 27-28 (citing AR 22-23)).

But there is nothing wrong with an ALJ summarizing the medical evidence in the record.

*See Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("[I]f [the claimant] is complaining that

the ALJ summarized the medical evidence, that is unavailing because summaries are

appropriate.").  Additionally, as discussed *supra*, evidence post-dating a claimant's date last

insured may still be relevant to determining the existence and extent of an impairment.  *See*

*Briscoe*, 425 F.3 at 353; *Bjornson v. Astrue*, 671 F.3d 640, 642 (7th Cir. 2012).  Further, as to

Perry's's obesity, "[a]n ALJ must evaluate all relevant evidence when determining an applicant's

RFC, including evidence of impairments that are not severe."  *Arnett*, 676 F.3d at 591 (citing 20

C.F.R. § 404.1545(a); *Craft*, 539 F.3d at 676).  Unsurprisingly then, the Court finds no error in

the ALJ summarizing and considering the evidence in the record—even if Perry believes it does

not necessarily support his claim.

Perry further criticizes the ALJ for supposedly discounting his symptom testimony regarding the use of crutches, a cane, or a walker.  (ECF 16 at 28).  But similar to his other arguments, Perry just suggests that "[t]he ALJ's emphasis on the use of a cane, crutches or a walker is off target other than during the actual surgical recovery."  (*Id.* at 29).  That is, Perry admits that he did not require the use of crutches or other assistive devices—other than during the period of his knee surgery recovery.  (*See* AR 306 ("[Perry] said he only used the walker for a couple of days and then used the cane but has been off of everything for three to four days.")).  But this is precisely what the ALJ found.  (*See* AR 19 ("Although the evidence establishes the claimant had neuropathy and a body mass index that fluctuated in the high 20's low 30's (Ex. 3F, 4F), the use of a cane over multiple appointments through the fall of 2018 is not reflected within the evidence.  Therefore, the use of a cane or assistive device to ambulate is not included within the claimant's residual functional capacity.").  Given that Perry does not argue that his RFC should have required the use of a cane or assistive device, it is hard to discern what error the ALJ possibly could have committed by discussing evidence discounting the need for a cane or walker.

Finally, Perry contends the ALJ found that despite his testimony regarding leg pain, "there is no evidence to support his testimony."  (ECF 16 at 29 (citing AR 19)).  Perry's characterization of the ALJ's decision, however, is not totally correct.  What the ALJ actually stated was:

> [Perry's] testimony that he can stand for 15 to 20 minutes before his pain intensified, he could walk one or two minutes, he could sit about five minutes, and he has to prop his leg up over two to three pillows when he sits, is not supported by the medical records discussed below.  The evidence does not establish significant motor strength deficits, muscle atrophy, or gait abnormalities through September 30, 2018.

26

(AR 19).

Yet, the ALJ's reasoning here is not free from criticism.  Even normal gait and muscle strength are not necessarily inconsistent with claims of debilitating pain.  *See Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015) ("The administrative law judge said that Adaire was seen to be able to move around 'with ease and had a normal gait.'  In other words, he does not limp.  She didn't explain why, if the applicant's evidence of pain were truthful, it would imply that he limps."); *Otis S. v. Saul*, 1:18-CV-372-WCL-JPK, 2019 WL 7669923, at *3 (N.D. Ind. Dec. 19, 2019) ("An ALJ's independent reliance on a claimant's muscle strength to depart from a medical opinion regarding such limitations therefore suggests an improper tendency to 'play doctor.'").

The ALJ, though, did not base her opinion solely on reports of lack of muscle strength loss or atrophy.  Rather—again as discussed *supra*—she relied on the opinions of the state agency physicians as she was entitled to do.  *Cf. Clifford*, 227 F.3d at 870 ("[T]he ALJ did not cite to any medical report or opinion that contradicts Dr. Combs's opinion.  In effect, the ALJ substituted his judgment for that of Dr. Combs . . . . That was error."); *see also Ottman*, 306 F. Supp. 2d. at 839.  The ALJ was also permitted to discount Perry's self-reported limitations to the extent they were not consistent with and supported by the record.  *See Ziegler v. Astrue*, 576 F. Supp. 2d 982, 998 (W.D. Wis. 2008), *aff'd*, 336 F. App'x 563 (7th Cir. 2009).  And other than Perry's consistent reports of leg pain and eventual nerve block injections, Perry points to no evidence supporting his self-reported limitations in standing and walking, as well as his need to prop his leg up.  (ECF 16 at 28 (citing AR 44-45)).  At the reconsideration level, Dr. Montoya considered the record—including Perry's consistent reports of pain and nerve block injections— before ultimately assigning a less restrictive RFC than the ALJ.  (AR 87-95).  Once again, the

ALJ was permitted to rely on Dr. Montoya's opinion, and Perry has not pointed to any other medical opinion evidence showing the need for greater restrictions. *See Rice*, 384 F.3d at 370.

In sum, despite Perry's suggestions to the contrary, the ALJ built "an accurate and logical bridge from evidence to her conclusion . . . ." *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012). There was nothing necessarily improper in how she considered evidence past Perry's date last insured or the opinions of the state agency physicians. While Perry argues that the ALJ considered evidence irrelevant to his claim, both the ALJ and the state agency physicians considered the evidence in the context of the impairment actually alleged in Perry's application for benefits. In any event, Perry has not identified any opinion or evidence in the record requiring greater restrictions than those included in the RFC. Accordingly, because the Court does not reweigh the evidence in the record, *Gedatus*, 994 F.3d at 901; *Clifford*, 227 F.3d at 869, Perry's final argument fails, and remand of this case is not warranted.

## IV.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Perry.

SO ORDERED.

Entered this 24th day of August 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge